George E. Saxe et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of State et al., Respondents. Ernest L. Gerrish, Petitioner *v.* Commonwealth of Pennsylvania, Department of State et al., Respondent.

Argued January 31, 1983, before Judges ROGERS, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Daniel W. Shoemaker, Shoemaker & Ness,* for appellants, George E. Saxe and Ed Saxe Real Estate, Inc.

*Richard K. Renn,* for appellant, Ernest L. Gerrish.

*Michael L. Solomon,* with him, *Mary S. Wyatte* and *David F. Phifer,* Chief Counsel, for respondent, Department of State.

*Joseph S. Rengert,* Counsel, for respondent, State Real Estate Commission.

OPINION BY JUDGE ROGERS, April 26, 1983:

The State Real Estate Commission imposed a one month's suspension of the real estate salesman's license of Ernest L. Gerrish, a one month's suspension of the real estate broker's license of George E. Saxe and a $500 fine upon Ed Saxe Real Estate Inc., a brokerage corporation owned by George E. Saxe. The three subjects of the Commission's order have appealed, contending that the evidence in the case does not support the Commission's findings of fact upon which it concluded that the appellants had committed violations of the statute regulating the conduct of their business.

In January 1980, Gerrish, working as a salesman for George E. Saxe and his corporation, received a copy of a letter from a Mrs. Walters sent to realtors in the vicinity of Gettysburg announcing that she and her husband were interested in selling their farm and that they would agree to an exclusive listing of the property only with a broker which offered a guaranteed purchase plan, described as an agreement made by the listing broker to purchase the listed property at a discount if it should be unable to sell it for the seller's listing price. George E. Saxe and his corpora-

tion had until late 1979 their own guaranteed purchase plan called NOW but discontinued this when, in January 1980, they became associated as a so-called Member Broker with an enterprise called National Guaranteed Homes Corporation which was engaged in the business of funding purchases of properties placed by real estate brokers. This program had the name of Guaranteed Homes Today. Gerrish called on the Walters sometime in February and left brochures advertising both the Saxes' NOW and the Guaranteed Homes Today programs. The NOW brochure promised that "Ed Saxe Real Estate will buy your home NOW" and that of Guaranteed Homes Today promised that "if all agents .... fail to sell your home Guaranteed Homes buys it at a fair ... price. ..."

Gerrish told the Walters that a Veterans Administration (VA) appraisal would be required. On March 17, 1980, before the VA appraisal had been received, Gerrish met with Mr. and Mrs. Walters and the Walters signed an agreement giving the Saxes the exclusive listing of their property. At the same time and as part of the same transaction, the Walters signed an agreement on a form entitled "Guaranteed Plan or Trade-In-Plan (T.I.P.) Agreement." The other party to this agreement was "Guaranteed Homes Member Broker Ed Saxe Real Estate Inc." Gerrish signed for Ed Saxe Real Estate Inc. Paragraph 13 of the Guaranteed Plan agreement reads:

> 13. If after extended marketing efforts of Member and all other real estate agents, brokers, Realtors, salespersons or any attorney-at-law with clients combine and all fail to obtain any buyer with acceptable terms and conditions; *shall this Agreement be exercised by Member of Guaranteed Homes. At such occurrence,* seller(s) shall receive a sum for the Guaranteed Sale of this property, of 86½% of the price

> cited in paragraph 9. less encumbrances or ob-
> ligations and seller(s) usual escrow, closing or
> final charges. (Emphasis added.)[1]

There is nothing on the form of agreement indicating that National Guaranteed Homes Corporation was to guarantee the purchase, and indeed its name is not mentioned on the form.

On or after March 17, but before March 19, 1980 George E. Saxe and Gerrish learned that National Guaranteed Homes Corporation would not fund the purchase of the Walters' property, assertedly on account of its financial inability or unwillingness to do so. On March 19, 1980, Gerrish visited the Walters and removed from their papers their copy of the Guaranteed Home Sales agreement without their knowledge. The same day he told the Walters, in the words of the board's finding, that the "deal was off." On March 20, 1980 Gerrish obtained from the Walters the VA appraisal which they had just received. On March 21, 1981 Gerrish prepared and mailed to the Walters a letter telling them, in apparent explanation for rescinding the purchase agreement, (1) that the VA appraisal was not high enough for the Guaranteed Homes Sale and (2) that the agreement had not been signed by National Guaranteed Homes Corporation and that "we" had no firm commitment for them to sign such. In the same letter he requested the Walters to notify him by registered mail within five days whether or not they wanted Saxe and his corporation to continue offering their property for sale. The

---

[1] This is the section of the agreement that provides the guarantee that Walters' property would be purchased by the Member Broker if not sold on the market. The phrases we have emphasized may have been intended as vehicles for avoiding the obligation to purchase; in which case, the unconditional promise to purchase contained in the Guaranteed Homes Today brochure and Gerrish's representation to the same effect were untruthful.

Walters made complaint to the State Real Estate Commission which then charged each of the three appellants with various offenses of the Real Estate Licensing Act, Act of February 19, 1980, P.L. 15, *as amended,* 63 P.S. §455.101 et seq. After hearing, the Commission concluded that each of the appellants had committed violations of Section 604 of the Act, 63 P.S. §455.604 as hereinafter set out.

The Appeal of Gerrish 111 C.D. 1982

The Commission concluded that Gerrish had committed the offenses described in subsections (1), (4) and (20) of Section 604 as follows:

(1) Making any substantial misrepresentation.

(4) Any misleading or untruthful advertising.

(20) Any conduct in a real estate transaction which demonstrates bad faith, dishonesty, untrustworthiness or incompetency.

The Commission determined that Gerrish violated 604(1) by substantially misrepresented facts in violation of 604(1) when he told the Walters that if his principals, the Saxes, could not sell the Walters' property the Saxes would guarantee its purchase; by furnishing them brochures making the same guarantee; and by later explaining Saxes' refusal to purchase the property as based on the insufficiency of the VA appraisal of their property and on the fact that National Guaranteed Homes Corporation had not signed the agreement and had made no firm commitment to purchase the property. The Commission was clearly correct. Gerrish's representation that the Saxes would surely purchase the property was a misrepresentation; the NOW program described in one of the brochures was in fact not available and the National Guaranteed Homes Corporation's program was illu-

sory.  The explanation for Saxes' renunciation of the agreement to purchase the property as the result of the inadequacy of the VA appraisal and the failure of National Guaranteed Homes Plan Corporation to sign the agreement were simply false.  The agreement did not provide that the Saxes could rescind if the VA appraisal was not up to snuff and National Guaranteed Homes Corporation was not a party to the agreement.

As to 604(4) we agree that the brochures were at best misleading advertising.  The NOW program did not exist and the form of agreement required for entry to its Guaranteed Homes Plan in fact guaranteed nothing on the part of National Guaranteed Homes Corporation.  Yet both brochures unconditionally promised that the property would be purchased.

The Commission concluded that Gerrish acted in bad faith and incompetently in ascribing the Saxes' inability to provide the Guaranteed Homes Plan to the assertedly inadequate VA appraisal and to the fact that the National Guaranteed Homes Corporation had not signed the agreement; when in truth the reason for Saxes' refusal to honor the agreement was National Guaranteed Homes Corporation's refusal to fund the transaction.

### The Saxes' Appeal—65 C.D. 1982

The Commission concluded that George E. Saxe and his company Ed Saxe Real Estate Inc. had violated subsection (4) of 604, (using misleading and untruthful advertising), and subsection (20) (conduct demonstrating bad faith and dishonesty).

George E. Saxe testified in his own and his corporation's behalf.  He described Gerrish as an excellent sales person, an asset to his office, very well thought of and said that Gerrish would not have been required to report to him anything Gerrish did be-

fore the agreement between the Walters was signed on March 17, 1980. He did not, however, disavow Gerrish's use of the brochures advertising his own discontinued NOW guaranteed home sales program or that of National Guaranteed Homes Corporation; nor did he question Gerrish's authority to sign the purchase agreement with the Walters in behalf of Ed Saxe Real Estate Inc. Because both of the brochures advertised guaranteed purchase plans which were in fact not guaranteed and because the agreement included a promise on the part of Ed Saxe Real Estate Inc. to purchase the Walters' property, which was later claimed to be dependent on National Guaranteed Homes Corporation Sales funding, Saxe and his corporation were not improperly held to have used misleading and untruthful advertisements.

George E. Saxe also testified that Gerrish was requested and did report to him concerning the transaction after the agreement with the Walters was signed on March 17, 1980; that on March 19, 1980 he learned that National Guaranteed Homes Corporation was "out of the market"; and that he discussed the events of the Walters' transaction with Gerrish at great length and concluded that Gerrish had not done anything wrong. A fair inference from this testimony is that Gerrish's letter of March 21, 1980, having been sent after March 17, 1980, had Mr. Saxe's approval. That letter, as we have seen, instead of giving the real reason for Saxes' refusal to go forward with the transaction, cited the asserted inadequacy of the VA appraisal and the fact that National Guaranteed Homes Corporation had not signed the agreement or made a firm commitment. We conclude that Mr. Saxe and his corporation were not improperly found to have violated Section 604(20).

Order affirmed.

596

## ORDER IN 65 C.D. 1982

AND Now, this 26th day of April, 1983, the order of the State Real Estate Commission in the above-captioned matter, suspending the real estate license of George E. Saxe for one month's suspension and fining Ed Saxe Real Estate, Inc. in the amount of $500.00, is affirmed.

## ORDER IN 111 C.D. 1982

AND Now, this 26th day of April, 1983, the order of the State Real Estate Commission in the above captioned matter, suspending the real estate license of Ernest L. Gerrish for one month is hereby affirmed.